AO 91 (Rev. 11/11)  Criminal Complaint

## UNITED STATES DISTRICT COURT
### **SEALED**
for the

District of Hawaii

**BY ORDER OF THE COURT**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Dec 26, 2025 3:03 PM**
Lucy H.Carrillo, Clerk of Court

United States of America )
v. )
)
DARREL GOO and )    Case No.  MJ25-01594 WRP
CY TAMURA )
)
)
)    **FILED UNDER SEAL PURSUANT TO**
)    **CRIMLR5.2(a)(1)**

_____
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____May 2016 to August 2025____ in the county of ____Hawaii____ in the

District of ____Hawaii and elsewhere____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 836 | Transporting fireworks into Hawaii (Goo and Tamura) |
| 18 USC 842(a), (j) | Engaging in the business of and transporting, distributing, and storing explosive materials (Goo and Tamura) |
| 18 USC 371 | Conspiracy (Goo and Tamura) |
| 18 USC 922(g)(1) | Felon in possession of a firearm or ammunition (Goo) |
| 18 USC 842(i)(1) | Shipping, transporting, receiving, possessing any explosive in and affecting interstate commerce (Goo) |

This criminal complaint is based on these facts:

See attached Affidavit in Support of Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Shaun Morita, Special Agent IRS-CI
*Printed name and title*

Sworn to under oath before me telephonically, and attestation
acknowledged pursuant to Fed.R.Crim.P. 4.1(b)(2).

Date:  ____December 26, 2025____

City and state:  ____Honolulu, Hawaii____



Wes Reber Porter
United States Magistrate Judge

KENNETH M. SORENSON
United States Attorney
District of Hawaii

REBECCA A. PERLMUTTER
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Email:  Rebecca.Perlmutter@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAG. NO. CR25-01594 WRP |
| Plaintiff, | |
| vs. | AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |
| DARREL GOO, CY TAMURA, | |
| Defendants. | |

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Shaun Morita, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

# INTRODUCTION

1.      This affidavit is submitted for the purpose of establishing probable cause that from in or around May 2016 to August 2025, in the District of Hawaii and elsewhere, DARREL GOO ("GOO") knowingly conspired and agreed with CY TAMURA ("TAMURA") and others to transport fireworks illegally into Hawaii, a State where the delivery, possession, storage, shipment, distribution, sale and use of such fireworks is prohibited or regulated by law (Hawaii Revised Statute ("HRS") § 132D), in violation of 18 U.S.C. §§ 836 and 371 (and such attempts).  Additionally, there is probable cause that GOO conspired and agreed with TAMURA to engage in the business of dealing, distributing, transporting and storing explosive materials, in violation of 18 U.S.C. §§ 842(a), (j)[1] and 371 (and such attempts).  Furthermore, there is probable cause that GOO, who has been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and shipped and transported any explosive in and affecting interstate commerce and received and possessed any explosive which had been shipped and transported in and affecting interstate commerce, in violation of 18 U.S.C. § 842(i)(1).

---

[1] "Explosive" is defined in 18 U.S.C. § 844(j).  Consumer grade 1.4G fireworks would not fall under this definition.

2.     I have been a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") since June 2005. My duties include the investigation of possible criminal violations of the Internal Revenue Code (Title 26, United States Code ("U.S.C.")), the Bank Secrecy Act (Title 31, U.S.C.), the Money Laundering Control Act of 1986 (Title 18, U.S.C., Sections 1956 and 1957), and other related offenses. I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and the Special Agent Basic Training Program at the IRS National Criminal Investigation Training Academy. I have been trained in accounting, investigations and techniques of alleged criminal violations of various financial crimes, and the laws of search and seizure. I earned a Bachelor of Business Administration degree in Accounting.

3.     In the course of my employment, I have conducted or assisted in criminal investigations involving violations of federal tax law, the Bank Secrecy Act, money laundering, RICO, and related offenses. I have written search and seizure warrant affidavits, criminal complaint affidavits, and participated in the execution of numerous federal search warrants involving alleged criminal violations during which evidence of criminal violations were seized, including documents and electronically stored data.

4.     The facts set for forth in this Affidavit are based on my personal knowledge and observations and knowledge and observations obtained from other

3

individuals during my participation in this investigation, including federal and state law enforcement (such as the ATF and FBI), interviews, surveillance, consensually monitored conversations, and review of documents, communications, and information contained within government databases.

5.     This Affidavit does not include each and every fact known to the government, but only those facts necessary to establish probable cause to support the requested Complaint.

## **PROBABLE CAUSE**

12.     The United States, including IRS-CI, the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), with the assistance of the State of Hawaii's Department of Attorney General, Special Investigation and Prosecution Division, and the Department of Law Enforcement, have been conducting a criminal investigation into GOO, TAMURA, and other persons known and unknown, regarding efforts to conceal the purchase, shipping, storage, and distribution of illegal fireworks from locations on the United States mainland to Hawaii.

### *Relevant Statutes and Regulations*

13.     HRS § 132D-7 (Fireworks – License or Permit Required) provides that a person shall not import, store, offer to sell, or sell, at wholesale or retail, aerial devices, display fireworks, articles pyrotechnic, or consumer fireworks, or

possess such devices, unless the person has a valid license or valid display permit if so possessed that is issued by the county.

14.     Hawaii County Code ("HCC") § 17-2 (Fireworks Code) provides that fireworks, including aerial devices, consumer fireworks, display fireworks, and articles pyrotechnic shall not be imported, possessed, stored, offered for sale, sold, transferred, purchased, set off, ignited, discharged, thrown, used, or otherwise caused to explode within the County unless licensed, permitted, or otherwise allowed by code.[2]

15.     27 Code of Federal Regulations ("CFR") § 555.11 defines "display fireworks" as large fireworks designed primarily to produce visible or audible effects by combustion, deflagration, or detonation.  It includes, but is not limited to, salutes containing more than 2 grains (130 mg) of explosive materials, aerial shells containing more than 40 grams of pyrotechnic composition, and other display pieces which exceed the limits of explosive material for classification as "consumer fireworks" (also known as 1.4G).  Display Fireworks are explosive

---

[2] HCC § 17-2 also provides that aerial devices, display fireworks, and articles pyrotechnic may be purchased, set off, ignited, discharged, or otherwise caused to explode only for display and if permitted in writing.  Aerial devices are prohibited for use by any person who does not have a display permit issued by the County and includes firework items commonly known as bottle rockets, sky rockets, missile-type rockets, helicopters, torpedoes, daygo bombs, roman candles, flying pigs, jumping jacks that move about the ground farther than a circle with a radius of twelve feet as measured from the point where the item was placed and ignited, aerial shells, and mines.

material subject to regulation under Federal explosives laws and regulations.

### *U.S. Mainland Fireworks Company*

16.      U.S. Mainland Fireworks Company (the "Fireworks Company") is based in Wisconsin.  It has been selling retail and wholesale fireworks for over 35 years and offers nationwide shipping based on location as well as local pickup at its Wisconsin warehouse.

### *GOO's Payments for Fireworks in Money Orders and Cash*

17.      From on or about May 2016 through July 2025, GOO and Fireworks Company Employee communicated by email and phone regarding the purchase and transport of fireworks.  GOO arranged annually to purchase fireworks by bulk from the Fireworks Company for up to approximately $131,000 in one purchase.  GOO and TAMURA traveled from Hawaii to the U.S. Mainland to arrange for the shipping and transport of the fireworks.

18.      GOO arranged to pay for the fireworks in a manner to conceal the transactions.  In earlier years, GOO prepaid for the fireworks using multiple money orders in amounts of $500 and $1,000.  The money orders were purchased at multiple locations on the Island of Hawaii and were purchased by multiple individuals, including TAMURA, in small increments to avoid detection.[3]  In later

---

[3] For example, on or about March 18, 2020, GOO told Fireworks Company Employee that it "just takes time for the money order and we can do it but it'll be a

years, GOO paid for the fireworks with cash that he provided to Fireworks Company Employee at the time he picked up the shipments on the U.S. Mainland.

19.      GOO also used a fictitious name, John Branco ("Branco"), and random Alaska addresses to conceal fireworks purchases.  For example, in or around May 2020, GOO placed a fireworks order under Branco for 588 cases of aerial-type fireworks including mortar tubes, multi-shot aerial cakes, rockets, and roman candles.  The Fireworks Company invoice total was $51,805.96 and included handwritten notes that stated, "50,000 Money Orders" and an Alaska customer address.  The Fireworks Company deposited 50 money orders in $1,000 denominations provided by GOO into its bank account.  The money orders were purchased from various Post Office locations in Hawaii County between on or about March 19, 2020, and April 24, 2020.

### *Hawaii County Fire Department Records*

20.      According to Hawaii County Fire Department records, there were no fireworks import, storage, wholesale, or retail licenses applied for and/or approved for GOO or TAMURA for the years 2024 or 2025.  Additionally, there were no permits for public display of fireworks applied for and/or approved for

---

few weeks.  We can only do so much at a time per day without the a holes giving us the whole 20 question thing and signing papers."

GOO or TAMURA for the years 2023, 2024, or 2025.[4] Thus, GOO and TAMURA did not have permits to legally transport fireworks into the State of Hawaii.

### *Shipping Company 1 and 2's Records*

21.     According to Shipping Company 1 and 2's records, beginning from at least 2017 and continuing through 2025, TAMURA arranged annually for 40-foot shipping containers either under his name or under the business names Island Planters or Island Centers.  Based on the investigation and records, fireworks were shipped from the Oregon or Wisconsin to Hilo, Hawaii and concealed in containers weighing approximately 30,000 pounds that falsely purported to contain horticultural materials.  The contents were falsely declared by the shipper as "Perlite, Horitcutural", "Horticultural Supplies including Perlite/Potting Soil", "Bailed Horse Hay & Potting Mix", "Horse Hay/Potting Mix", and "Bailed Hay".

22.     During an interview with law enforcement on August 13, 2025, GOO explained that TAMURA was the shipper on the manifests since GOO did not want his name tied to the shipments.  TAMURA also helped GOO unload the fireworks once they arrived at the port of Hilo.

---

[4] Records are still being retrieved for earlier years.

### *GOO's Logistical Plans to Pick Up and Ship Fireworks*

23.       Based on the investigation, GOO typically picked up his annual fireworks order after the Fourth of July.  At a time prior to April 2020, GOO switched from having fireworks delivered to Oregon to picking up the order from the Fireworks Company's warehouse in Prescott, Wisconsin (the "Prescott Warehouse").  Fireworks Company workers would pick and wrap GOO's fireworks order in black shrink wrap.  GOO bought pallets of topsoil to load in the shipping containers of fireworks to conceal the contents from possible inspection. GOO eventually asked Fireworks Company Employee to procure bales of hay to load in the containers instead of topsoil.

24.       As part of the order process, TAMURA arranged for two shipping containers to be delivered to the Prescott Warehouse.  GOO then traveled to Wisconsin with TAMURA, his business partner.  During the trips, they also traveled to the Indiana area to purchase "overload" fireworks that they shipped back to Hawaii.  At times, GOO also purchased "overloads" from an employee who worked for Fireworks Company's related company.

25.       Based on the investigation and consultation with Fireworks Company Employee and ATF explosives personnel, "overloads" generally refer to fireworks that appear to be consumer grade 1.4G fireworks, but in truth and fact are packed with more explosive material, such as 1.3G fireworks.  These differ

9

primarily in their hazard classification, which is determined by the amount of flash powder and explosive material they contain. 1.3G fireworks, often used in professional displays and require strict regulatory licensing and handling and storage protocols, contain more flash powder, resulting in louder and more powerful effects than 1.4G fireworks, which are intended for consumer use. To make a specific determination of the level/amount of explosive material enclosed in a firework, it must be tested.

### *2025 Undercover Operation*

26.     From on or about March 2025 to July 2025, investigators engaged in an undercover operation to monitor GOO's annual fireworks purchase, which included working with the Fireworks Company and Fireworks Company Employee to surveil and monitor communications between Fireworks Company Employee and GOO. GOO used burner phones to communicate with Fireworks Company Employee regarding his annual orders.

27.     On or about July 15, 2025, GOO and TAMURA arrived at the Prescott Warehouse to meet Fireworks Company Employee. Just prior to GOO and TAMURA's arrival, two 40-foot Shipping Company 1 containers were delivered. During the consensually monitored meeting between Fireworks Company Employee, GOO and TAMURA, GOO indicated that they would load their fireworks order into the containers and potentially purchase additional

fireworks. GOO also indicated that he and TAMURA would fly to Kentucky to purchase "overloads" and bring them back to load in the containers to be transported to Hawaii.

28.    During consensually monitored conversations, GOO explained that he has distributors on Hawaii Island that sell to their own customers and that GOO and TAMURA operate like a warehouse. GOO stores fireworks on his property.[5] GOO said that he and TAMURA are business partners, but that he keeps TAMURA safe and no one knows TAMURA. GOO represented that their sales markup on fireworks was anywhere from 600% to 1000% to cover all their shipping, time, travel and sweat efforts.[6] GOO also explained that a lot went into storing the fireworks and worrying about people finding out.

29.    On or about July 16, 2025, GOO provided Fireworks Company Employee with approximately $62,500 in cash to pay for their order.

---

[5] During an interview with law enforcement on August 13, 2025, GOO stated that his fireworks sales season ran from October through December. GOO had a network of people who helped him sell fireworks and were paid between $20 and $50 per piece sold. GOO passed out inventory lists on paper and text. Customers texted GOO what they wanted, and GOO would deliver the fireworks to them. GOO used burner cellphones to communicate with his distributors and customers.

[6] For example, on or about January 26, 2024, GOO messaged Fireworks Company Employee stating in part: "we did good but not as great as I would've wanted…like total sell out, which would've been like 800k…."

30.     On or about July 17, 2025, during a consensually monitored meeting at the warehouse, GOO stated in part: "we're not going to lose, we're not going to give this shit away…we just fucken shipped this thing over the ocean and through the ports…we're fucken smuggling this shit, it's not legal."  After the meeting, GOO and TAMURA loaded their orders of fireworks from Fireworks Company into one of the containers.  The next day, GOO and TAMURA loaded bales of hay into the container to conceal the fireworks.

31.     On or about July 20, 2025, electronic surveillance identified that GOO, and likely TAMURA, traveled to locations in and around Kentucky and Indiana before returning to the Prescott Warehouse area.  Over the next two days, GOO and TAMURA drove a box truck with a Kentucky license plate to the Prescott Warehouse and unloaded boxes of fireworks.  In the second container, they loaded approximately 18 pallets of boxes containing fireworks and bales of hay intended to conceal the fireworks.[7]

32.     On or about July 22, 2025, a search warrant of the two containers was issued by a United States Magistrate Judge in the Western District of Wisconsin. Thereafter, law enforcement covertly executed the warrant and seized

---

[7] During an interview with law enforcement on August 13, 2025, GOO stated that he purchased approximately $80,000 of "overload" fireworks from the Kentucky area this year, which is typical.

approximately 18 pallets of boxes containing aerial-type fireworks from the

Fireworks Company and 18 pallets of boxes of fireworks presumed to be

"overloads" from Kentucky/Indiana.  Affixed to the boxes were Department of

Transportation 1.4G explosives labels and boxes that had what appeared to be

covered up labels. The boxes had labels stating "fireworks," "handle carefully,"

and "keep fire away."[8]  Law enforcement filled the empty containers with concrete

mix bags.  As GOO/TAMURA had arranged, the containers were picked up for

transport and traveled from the Prescott Warehouse to the Port of Long Beach in

California, and then by barge to the Port of Honolulu.

### *Images of Container 1 Loaded with Fireworks[9]*

---

[8] Some of the fireworks were labeled: "Welcome to the Jungle," "Hell Raiser,"
"Just Here to Bang," "H.C.M.F. Hard Core Mutha Fucka," "Piggie Bomb," and
"Shot Caller."  As described below, many of these fireworks were falsely labeled
as 1.4G, *i.e.*, consumer grade, but instead were "overloads" that field tested as
more explosive display fireworks.

[9] As described above, Container 2 looks similar in how it was loaded.





12.    In September 2025, law enforcement, specifically ATF explosive specialists, field tested a sample variety of the seized fireworks to obtain the burst/salute charge weight for aerial devices and the pyrotechnic composition for multitube shots or "cakes".  All the tested fireworks, except three "cakes", exceeded the explosive limits for classification as "consumer fireworks" by up to 552 times the limit; thus qualifying the tested fireworks as "display fireworks."

*Search Warrants Executed on GOO and TAMURA's Hawaii Residences*

13.   On or about August 11, 2025, a United States Magistrate Judge in the District of Hawaii issued search warrants for GOO and TAMURA's residences in the Hilo, Hawaii area.

14.   On August 13, 2025, at GOO's residence, law enforcement seized documents, digital devices, a Ruger model 22/45 Lite .22 caliber pistol bearing serial number NRA303545 ("Ruger"), a Sig Sauer P322 .22 caliber pistol bearing serial number 73A060107 ("Sig Sauer"), a Tauras model 605, .357 caliber revolver bearing serial number LX12453 ("Taurus"), an unserialized 9 mm caliber Privately Made Firearm ("PMF"), approximately 2,700 rounds of various caliber ammunition, approximately $8,909 in cash, 36 M-type explosive devices, and approximately 33 pallets of various fireworks marked as 1.3G and 1.4G.

15.   The Ruger and Sig Sauer, along with wads of cash, were found in the main bedroom in hidden pullout drawers in the right- and left-side nightstands. GOO informed agents that he kept a gun in the center console of his Chevrolet Silverado, which was his vehicle.  Agents found the PMF with a magazine and round in the chamber under the center console.  During the search, GOO also provided agents with a code to a safe located within one of the locked shipping containers that contained fireworks.  Agents found the Taurus and five rounds of

.38 caliber ammunition inside the safe, along with boxes and loose rounds of various caliber ammunition, and other items associated with GOO.

16.    GOO told law enforcement that he knew he was a felon and could not possess firearms.  GOO also admitted that the "ghost gun" in his Chevrolet Silverado was his, and knew of the other firearms in and around the residence.

17.    On August 13, 2025, at TAMURA's residence, law enforcement seized documents and records, digital devices, over $40,000 in cash, and approximately three pallets of various fireworks marked 1.4G.

18.    Among other admissions to law enforcement about the fireworks, TAMURA stated that GOO had told him about overloads.  TAMURA believed that overloads were bigger fireworks that had a bigger explosion or effect.  He also thought they sold better because they had more gunpowder.  TAMURA also stated that he was compensated by GOO in cash based on a percentage of the profits GOO made from selling fireworks.

### *Fireworks Seized from GOO's Residence*

19.    Approximately 36 pallets of fireworks weighing approximately 37,010 pounds were seized from GOO and TAMURA's residences.  Many of the fireworks were marked as 1.3G type aerial display fireworks, and approximately

50 other items were suspected to test as 1.3G type display fireworks.[10]  The

fireworks were found in multiple locked shipping containers and other storage

locations on GOO's property and storage sheds on TAMURA's property.

20.    In November 2025, ATF explosive specialists field tested a sample

variety of fireworks seized from GOO's residence that were unmarked with a

designation type to obtain the burst/salute charge weight.

21.    All tested fireworks exceeded the limits of explosive materials for

classification as "consumer fireworks" (they were tested to be between

approximately 142 to 1,164 times the consumer firework explosive limit); thus

qualifying them as "display fireworks" or otherwise illegal M type devices.

*Selected Images of Fireworks Seized from GOO's Residence*

---

[10] According to ATF Special Agent Christopher Tuitele, who is a Certified
Explosives Specialist/Bomb Technician, the 1.3G type fireworks constitute
"explosives" as defined by Title 18, United States Code, Sections 841(c) and (d) in
that they are "display fireworks" as that term is defined in Title 27, Code of
Federal Regulations, Section 555.11 and listed in 90 Federal Register 25077 (June
13, 2025), and were manufactured outside of Hawaii.







22.    According to ATF Special Agent Christopher Tuitele, a Firearms Interstate Nexus Expert, there is probable cause to believe that firearms recovered at GOO's residence meet the definition of firearm in 18 U.S.C. § 921(a)(3). The Ruger, Sig Sauer, and Taurus were all manufactured outside Hawaii. The ammunition recovered at GOO's residence is ammunition as defined in 18 U.S.C. § 921(a)(17)(A), and manufactured outside Hawaii.

23.    According to the Hawaii Criminal Justice Information System, on or about February 21, 1996, GOO was sentenced to five years of imprisonment for convictions involving two Class C State of Hawaii felonies.

## <u>CONCLUSION</u>

24.    Based on the foregoing, I believe there is probable cause that GOO and TAMURA conspired to commit the offenses of 18 U.S.C. §§ 836 and 371 (and such attempts) and 18 U.S.C. §§ 842(a), (j) and 371 (and such attempts).

Furthermore, there is probable cause that GOO committed the offenses of 18

U.S.C. § 922(g)(1) and 18 U.S.C. § 842(i)(1).

DATED: Honolulu, Hawaii, December 26, 2025.

Respectfully submitted,

_____
Shaun Morita
Special Agent, IRS-CI

Sworn to under oath before me telephonically, and attestation acknowledged
pursuant to Fed. R. Crim. P. 4.1(b)(2), this __26th__ day of December, 2025, at
Honolulu, Hawaii.



_____
Wes Reber Porter
United States Magistrate Judge

20